DECISION AND JUDGMENT
{¶ 1} Appellant, Family Dollar Stores, appeals the judgment of the Lucas County Court of Common Pleas allowing appellee, Pauline Plotner (Lenz) to participate in the Ohio workers' compensation fund for the condition of aggravation of preexisting degenerative central disc herniation at C5-6. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On July 21, 2000, appellee sustained injury in the course of her employment with appellant. Specifically, appellee sustained injury to her neck while *Page 2 
unloading four-gallon cases of bleach from a semi truck. At the time of her injury, she had just picked up a case of bleach and was turning to place it in a stack when she was startled by the presence of a newly-placed cart loaded with freight. She reacted by twisting in an awkward position, at which point she felt immediate and intense pain in her neck that radiated to her left shoulder and arm. In the days that followed, appellee experienced persisting pain on the left side of her neck and she had pain, numbness, and tingling that radiated down her arm and into her hand and fingers.
 {¶ 3} Five or six days after she was injured, appellee presented to her family physician, Dr. Robert Wenzke. In response to her complaints, Dr. Wenzke prescribed a muscle relaxant.
 {¶ 4} On July 31, appellee presented to Dr. Popovich, who treated her for cervical and thoracic sprain. Dr. Popovich ordered some work restrictions and prescribed physical therapy.
 {¶ 5} Appellee filed an application for payment of compensation and medical benefits with the Bureau of Workers' Compensation and with the Industrial Commission of Ohio. The claim was recognized for the condition of "sprain of neck, sprain thoracic region, and depressive disorder, NOS."
 {¶ 6} Appellee had the prescribed physical therapy and continued to see Dr. Popovich, on a biweekly basis, until November 2000. Despite her efforts, appellee did not experience substantial relief from her symptoms. *Page 3 
 {¶ 7} In September 2000, Dr. Popovich ordered additional testing, in the form of x-rays and an MRI. The MRI report indicated that appellee had cervical disc herniations at levels C4-5, C5-6, and C6-7. As a result of this report, Dr. Popovich referred appellee to neurosurgeon Dr. Leo Clark. On September 11, 2000, appellee finally stopped working altogether.
 {¶ 8} Appellee first met with Dr. Clark in October 2000. According to appellee, Dr. Clark, who apparently did not believe that appellee had suffered a compensable injury, never looked at her MRI films.
 {¶ 9} Appellee returned to Dr. Popovich, who continued appellee's physical therapy and continued to keep her off of work. In addition, Dr. Popovich referred appellee to Dr. Park, a physiatrist.
 {¶ 10} Through Dr. Park, appellee continued her physical therapy, staying in treatment with him until November 2001. During this time, Dr. Park ordered an MRI of appellee's rotator cuff area and an EMG. As a result of those tests, Dr. Park referred appellee to Dr. Frogameni, an orthopedic surgeon.
 {¶ 11} Dr. Frogameni focused on appellee's upper shoulder area, and injected her there with the purpose of easing her pain. According to appellee, the injection provided no relief.
 {¶ 12} Eventually, Dr. Frogameni ruled out any problems with appellee's shoulder and suggested that appellee seek chiropractic treatment. *Page 4 
 {¶ 13} In January 2002, appellee began treatment with chiropractor, Dr. Poitinger. Dr. Poitinger prescribed electrical stimulation, ice packs, heat packs, and adjustments, with the focus of the treatment area being appellee's neck.
 {¶ 14} On or about May 2, 2002, appellee filed a motion with the Bureau of Workers' Compensation requesting an amendment of her claim to include "thoracic spondylosis, cervical herniated nucleus pulposis at C4-5, C5-6, C6-7, and degenerative disc disease at T4-5." Following a hearing on the matter, the district hearing officer issued an order dismissing (at appellee's request) all of the requested additional allowances except the cervical herniated nucleus pulposis at C6-7. The condition of herniated nucleus pulposis at C6-7 was allowed. Appellant appealed this order to the staff hearing officer of the Industrial Commission. The staff hearing officer modified the district hearing officer's order, but still allowed the claim for cervical herniated nucleus pulposis at C6-7. The Industrial Commission refused appellant's appeal, and appellant appealed to the Lucas County Court of Common Pleas pursuant to R.C. 4123.512.
 {¶ 15} Appellee continued her treatment with Dr. Poitinger until the middle of 2005.
 {¶ 16} Also in 2005, appellee presented to Dr. James Bassett, a pain specialist. Dr. Bassett administered three epidural steroid injections. When these failed to help, Dr. Bassett referred appellee to orthopedic surgeon Dr. Daniel Sullivan. In a letter dated September 2, 2005, Dr. Sullivan stated that his impression was that appellee's MRI *Page 5 
studies were consistent with three level discal pathology at C4-5, C5-6, and C6-7, with the largest central discal lesion at C6-7. Dr. Sullivan additionally stated:
 {¶ 17} "If the patient is successful in amending her [workers' compensation] claim properly, as it should have been at the outset, forthree level degenerative central disc herniation aggravated by herinjury, one would proceed to diskography at all three levels to determine which level should be done surgically at this point." (Emphasis added.)
 {¶ 18} On or about September 16, 2005, appellee filed a motion to additionally allow her claim for aggravation of preexisting degenerative central disc herniations at C4-5 and C5-6. On November 21, 2005, a district hearing officer granted the motion, thereby allowing the claim for aggravation of preexisting degenerative central disc herniations at C4-5 and C5-6. Appellant appealed, and on January 13, 3006, a staff hearing officer also granted the motion, allowing the claim for aggravation of preexisting degenerative central disc herniations at C4-5 and C5-6. Thereafter, the Industrial Commission refused appellant's appeal. Pursuant to R.C. 4123.512, appellant appealed to the common pleas court. The trial court subsequently consolidated appellant's two appeals.
 {¶ 19} At some point during the first half of 2006, appellee underwent a discography study. The results of that study prompted Dr. Sullivan to recommend surgery for appellee at level C5-6.
 {¶ 20} On June 13, 2006, Dr. Sullivan performed a discectomy at C5-6. A year after the surgery, appellee reported having some relief from her symptoms, in the form of *Page 6 
diminished numbness and tingling in her fingers. In addition, she was able to go back to work, with restrictions.
 {¶ 21} Appellant's consolidated appeal proceeded to trial on June 6, 2007.
 {¶ 22} At trial, the evidence relevantly provided as follows. Dr. Sullivan testified that it was his opinion, to a reasonable degree of medical certainty, that appellee had had preexisting degenerative disc disease that became symptomatic and resulted in herniation at C5-6 at the time of — and as a proximate result of — appellee's July 21, 2000 injury on the job.
 {¶ 23} Physiatrist and independent medical examiner Susan Rice, M.D., likewise testified that it was her opinion, to a reasonable degree of medical probability, that "there was objective evidence to support degenerative central disc herniations at C4-5 and C5-6," and that the work incident proximately caused those herniations.
 {¶ 24} After hearing all of the evidence, the jury returned a verdict finding that appellee is not entitled to participate in the Ohio workers' compensation fund for preexisting degenerative central disc herniation at C4-5 and herniated nucleus pulposis at C6-7, but is entitled to participate for aggravation of preexisting degenerative disc herniation at C5-6. On June 12, 2007, the trial court entered judgment consistent with the jury's finding.
 {¶ 25} On June 18, 2007, appellant filed a motion for judgment notwithstanding the verdict. On August 3, 2007, the trial court denied appellant's motion. Thereafter, *Page 7 
appellant filed the instant appeal with this court, raising the following assignments of error:
 {¶ 26} I. "THE TRIAL COURT ERRED IN DENYING FAMILY DOLLAR STORES' MOTION FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT."
 {¶ 27} II. "THE TRIAL COURT ERRED BY GIVING THE JURY AN INSTRUCTION ON AGGRAVATION OF PRE-EXISTING DEGENERATIVE CENTRAL DISC HERNIATION AT C5-6 WHERE THERE WAS NO COMPETENT MEDICAL EVIDENCE TO SUPPORT SUCH CONDITION."
 {¶ 28} The essential issue in both of appellant's assignments of error is whether there was evidence sufficient to prove appellee's entitlement to participate in the workers' compensation fund for the medical condition of "aggravation of pre-existing degenerative central disc herniation at C5-6." In support of its argument that there was not, appellant points to the fact that none of appellee's experts specifically testified that the July 21, 2000 work incident proximately caused "aggravation of a pre-existing degenerative central disc herniation." Instead, the evidence demonstrated that appellee's work injury proximately caused aggravation of preexisting degenerative disc disease, with a resulting central disc herniation at C5-6.
 {¶ 29} We recognize that a workers' compensation claim for any given condition does not include a claim for aggravation of that condition, and vice-versa. See Davidson *Page 8 v. Ohio Bur. of Workers' Comp., 2d Dist. No. 21731, 2007-Ohio-792. As stated by the court in Davidson, supra,
 {¶ 30} "To demonstrate that a direct injury is the result of the accident raising the need to participate in the Workers' Compensation Fund, the evidence must show that a direct or proximate causal relationship existed between the claimant's accidental injury and his or her harm. * * * This is different from * * * evidence showing that a pre-existing condition has been aggravated. In such a case, "`the key is whether the aggravation had an impact on a person's bodily functions or affected an individual's ability to function or work."' * * * Aggravation of a pre-existing condition can be demonstrated `through symptoms, debilitating effects, or physiological changes not due to the normal progression of the [condition].' * * * To presume that the commission will consider the evidence in light of both types of conditions, regardless of the type of claim made, is too broad an interpretation of the commission's role." Id. at ¶ 28 (citations omitted).
 {¶ 31} In the instant case, we find that appellee's claim for "aggravation of preexisting degenerative central disc herniation at C5-6" was merely an inartfully drafted claim for the condition that was actually proved at trial. We note that both the injury that was claimed and the injury that was proved involved aggravation of a previous degenerative disc disease and a herniated disc at C5-6.
 {¶ 32} In support of our conclusion that this case involves a poorly drafted claim for a condition that was supported by the evidence, and not a properly drafted claim for a *Page 9 
condition that was unsupported by the evidence, we note that appellee's earlier request to amend her claim to include the unqualified condition of "cervical herniated nucleus pulposis at C5-6" was voluntarily dismissed by appellee and was apparently replaced by the current claim in conformity with Dr. Sullivan's additional findings as set forth in his September 2, 2005 letter.
 {¶ 33} Important to our determination in this case is our additional conclusion that appellant was not unfairly prejudiced by appellee's claim as drafted. We reach this conclusion based on the fact that Dr. Sullivan's deposition testimony explaining his findings as related in the September 2, 2005 letter was available to appellant months before trial. Thus, it cannot reasonably be argued that appellant was "ambushed" by any new theory of causation.
 {¶ 34} Because there was competent evidence sufficient to establish appellee's claim in this case, appellant's first and second assignments of error are found not well-taken.
 {¶ 35} For all of the foregoing reasons, the judgment of the trial court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 1